Hay, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This is a suit brought by the plaintiff to recover from the defendant the sum of $8,011.58, alleged to be due the plain *450 tiff for dredging 67,000 cubic yards of material in Los An-geles Harbor. The plaintiff entered into a contract with the defendant by which it agreed, in conformity with the advertisement and specifications attached to and made part of the contract, to do the work of dredging in division C at Los Angeles Harbor; and the defendants agreed, in consideration of that service, that “ the contracting officer shall pay to the said contractor the sum of eight and nine thousand seven hundred and twenty-five ten-thousandths ($0.089725) cents per cubic yard of material thus dredged.”
The specific work to be done under the contract was to deepen to 20 feet two channels “ extending from the turning basin, one to the easterly end of the east basin, and the other to the northerly end of the west basin,” and these channels were to be dredged to such widths, not exceeding 200 feet, as the funds would permit.
The work was begun on or about January 10, 1911, and continued without interruption to March 10, 1911, at which time a flood of great and unusual proportions took place in the rivers which were tributary to Los Angeles Harbor. The result of this flood was that large quantities of silt and other material was washed into the area in which the plaintiff was at work. The claim of the plaintiff is that this extra amount of material which is dredged must be paid for at contract rates by the defendants.
The case turns in part upon the specification attached to and made a part of the contract which provides for the measurement of the material dredged, and payment therefor in accordance with the measurement. The specification under consideration,- or that part of it with which we are concerned, reads as follows:
“As soon as practicable after the completion of the entire work, a final survey will be completed over the area dredged and final payment will be based entirely upon the differences between the soundings in the survey made before beginning work and the final survey. Final payment will include any necessary corrections of deductions made in the monthly payments. Should any shoals, lumps, or ridges be disclosed by the final survey, the contractor may be required to remove them at the regular contract rates.”
*451 . The Government engineer made a survey of the area to be dredged by the claimant before the work began, and informed the contractor that there were 1,041,579 cubic yards of material to be dredged. After the flood above referred to, to wit, on March 10 and 11, 1911, the Government engineer made another survey of the aforesaid area, and informed the plaintiff that in addition to the 1,041,579 cubic yards of material which were in the area to be dredged the flood had washed into the said area an additional amount of 67,000 cubic yards of material. The claimant continued on the work and completed the same on June 5,1912, by dredging the 1,041,579 cubic yards of material, as well as the 67,000 cubic yards of material which had been washed into the said area by the flood aforesaid. The defendants without making the final survey, which the specifications required.them to do, paid the plaintiff for the 1,041,579 cubic yards, but refused to pay it for the 67,000 cubic yards of material which it had dredged, and which it was compelled to dredge in order to perform its contract. It will be seen from the facts above cited that the defendants did not make the final survey which the specifications required, and therefore in making final payment to the contractor that payment was not “based entirely upon the differences between the soundings in the survey made before the beginning of the work and the final survey.” The differences between the soundings in the survey made before the beginning of the work and the final survey not having been ascertained, as required by the specifications, the basis for payment provided for in the specifications has not been observed; in effect this clause of the specifications has been ignored; it is too late to invoke it now in this court, when it is impossible for the court to ascertain what the differences between the soundings in the survey made before the beginning of the work and the final survey might have been.
Therefore the court will proceed to fix a basis of payment for the work done. It is agreed that the plaintiff dredged (he 67,000 cubic yards of material washed into the area to be dredged by the flood, as well as the 1,041,579 cubic yards of material which were in the area when the work began. *452 Undoubtedly it was the intention of the parties to this contract that payment was to be made on a yardage basis, and the contract must be construed, wherever there is room for such construction, to carry out the intention of the parties. The spirit of the contract was that payment should be made for each unit of material removed. The contract, while it provided for payment on a yardage basis, also provided how the number of yards removed should be ascertained. The method provided for this was not resorted to, and hence the court must ascertain the number of units removed. About the number of units removed there is no dispute; the court is therefore of opinion that the plaintiff is entitled to be paid for the number of units which it removed from the area to be dredged.
It follows from the foregoing that the plaintiff should have judgment for $6,011.58, and it is so ordered.