**DE ARMAS v. UNITED STATES.**

No. 45221.

Court of Claims.

April 7, 1947.

William C. Holmes, of New Orleans, La., for plaintiff.

G. V. Palmes, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and MADDEN, JONES, WHITAKER, and LITTLETON, Judges.

MADDEN, Judge.

The plaintiff made a contract with the Government to repair East Jetty, Southwest Pass, at the mouth of the Mississippi River. One of the elements of the work was the manufacture and placing of large fascine mattresses of willow poles on the floor of the gulf and of the river, adjacent to the jetty, to prevent the undermining of the jetty by washing. The mattresses were made in large sections, some 200 feet long by 40 feet wide, and, when sunk, were covered by stone of the size which a man could lift, to the amount of 60 pounds on each square foot of the mattresses. Each mattress was to be so laid that one edge would come to the toe or outside of the rock mound of the jetty and then that edge of the mattress, to a width of some ten feet, was to be covered with stone weighing several tons each called core stone and cover stone, which stone would in effect constitute additions to the rock mound of the jetty.

The plaintiff's suit is based upon two situations that arose out of the work. The first is that portions of three mattresses were seriously damaged by a storm after they had been sunk but before work on them had been completed, and the plaintiff, at the Government's direction, replaced the damaged portions with newly made sections of mattresses and recovered the replaced portions with stone, at a cost of some $8,000.00. The other basis of claim is that the Government deducted $7,750 from the plaintiff's pay as liquidated damages for alleged late completion of the contract, which money the plaintiff seeks to recover here because, he says, he was entitled to an extension of his contract time sufficient to cover the period of delay.

We shall first discuss the question of the damage to the mattresses caused by the storm. On Saturday, January 14 and Monday, January 16, 1939, the plaintiff sunk and covered with man-size stone two mattresses on the gulf side of the jetty. At about 1:45 P.M. on January 16, the sinking

and covering of a third mattress, 264 feet long by 40 feet wide, was begun. By 6:45 P.M. the mattress had been sunk and 180 tons of stone had been placed on it, but there were still 135 tons of stone to be placed on it. The Government inspector stopped the work for the day. None of the heavy core or cover stone had been placed along the jetty edge of any of the three mattresses. On the next day, the seventeenth, there was a heavy sea and it was impossible to work on the gulf side of the jetty. During the night of the seventeenth, high winds and rough seas agitated portions of the three mattresses, rolling the stones aside and tearing the mattresses apart. As we have said, the plaintiff was directed to repair the mattresses and again cover the repaired parts with stone, which he did at a cost of $8,349.87, for which he sues.

The theory of this part of the plaintiff's claim is not clear. He insists that he was not at fault in regard to the damage, and seems to deduce from that that he should not bear the loss. But of course that does not follow. There are losses and misfortunes not due to the fault of anyone and their incidence cannot, therefore, be determined on the basis of fault. We are inclined to think that the reason the mattresses were damaged was that they were not weighted down on their edge nearest the jetty by the heavy core and cover stone which was intended to be placed on them. The dash of the waves against the jetty, and the flow of the water from the river through the breaks in the jetty probably produced an undercurrent which caught the edges of the mattresses and rolled back the small stones which held them down, thus subjecting the mattresses to the action of the waves. If we are correct as to the cause of the damage, it would have been prudent procedure to have placed the core and cover stone upon each mattress as soon as it was sunk. Apparently neither plaintiff nor the Government knew this until after the damage was done. No mattresses had been placed in the gulf, at least for many years, and hence neither the plaintiff nor the Government had had experience with the particular problem, although both the plaintiff and the Government men on the project were as familiar with the area and its problems as anyone was. The Government inspector directed the plaintiff to keep sinking mattresses while the weather was calm in the gulf on January 16th, so apparently he was not aware of the danger that might be caused by a storm if one occurred before the core and cover stone were placed. But the plaintiff's superintendent readily acquiesced in the direction, hence he also was apparently unaware of the danger. No fault can therefore be assessed as to the order in which the work was directed to be done, and was done.

The question then, is, who must bear the loss from a destruction of a part of the work which the plaintiff had contracted to do, while that work was in an unfinished stage. The specifications, as shown in findings 3 and 33, require of the plaintiff a completed job, quite comparable to a construction job. He was to manufacture and sink the mattresses, cover them with stone and make the repairs to the jetty, as specified. The specifications as to final examination and acceptance certainly contemplated that the work should stand in place in a useful condition when the contract was completed. We think, therefore, that its being damaged by forces of nature and without anyone's fault before it was completed and accepted as complete, was the plaintiff's misfortune and loss.

The plaintiff also seeks to recover liquidated damages deducted from his payments on the contract because, the Government said, he was thirty-one days late in completing his work. The rate of deduction provided in the contract was $250 per day and the total deduction was $7,750. As shown in finding 38, the work was completed on April 21, 1939, which was 51 days after the original completion date, but the contracting officer extended the plaintiff's time by seventeen days and the head of the department, on appeal, increased the extension to twenty days, thus leaving thirty-one days for which damages were assessed and deducted.

The plaintiff claims that he was not given as much extension of time as he was entitled to under the contract. There are two provisions of the contract relating to ex-

tensions of time. Paragraph 1–05 of the specifications, quoted in finding 40, provides that the contracting officer may suspend the work if conditions are unfavorable, and that the contract time will be extended for the period of such suspension. Article 9 of the contract provides that liquidated damages shall not be charged for time lost due to "unforeseeable causes beyond the control and without the fault or negligence of the contractor." We find that, on some occasions, the Government inspector suspended the work for halves of days on account of the weather, but the contracting officer granted no corresponding extensions of time; that on other occasions when the weather was such that in fact no work could be done or was done, the work was directed to be suspended and therefore no extension of time was made; and that on two days when the contractor was required, by the Government's direction, to devote his facilities to cleaning up the debris caused by the storm of January 17, and could not, therefore, get forward to completion of the contract, no extension was given.

Here was a contract with a very short time for completion. The weather conditions were generally much more adverse than in other years. The rate of liquidated damages was substantial, $250 per day. We think that, under the contract, the plaintiff was entitled to extensions on the occasions described above, as to the first two, under paragraph 1–05 of the specifications, and as to the third, under Article 9 of the contract relating to "unforeseeable causes" of delay. We think that, in the circumstances, it was arbitrary action on the part of the contracting officer to refuse these extensions, and hence, even if their decisions would have been final if not arbitrary, which question we do not decide, they are not final in the circumstances here present. We hold therefore, that the plaintiff should have been given extensions of time of seven and one-half more days than he was given, and that he may recover $1,875.00.

It is so ordered.

WHALEY, Chief Justice, took no part in the decision of this case.