## PALUMBO v. UNITED STATES.

### No. 49391.

United States Court of Claims.
July 13, 1953.

D. M. Healy, C. E. Cessna, Jr., and Healy, Newby, Cessna & Healy, Chicago, Ill., were on the brief, for plaintiff.

S. R. Gamer, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

Plaintiff sues to recover the sum of $105,265.80 which he alleges is due him from the defendant under a construction contract as a remission of liquidated damages assessed against him under the contract and as additional compensation for work performed, for which he alleges he was not compensated.

On June 29, 1943, Samuel S. Palumbo, Joseph Palumbo and Carmella C. Palumbo, a partnership, doing business as Palumbo Excavating Company, and Maurice Chernus, Joseph Sharf, and Lena Chernus, a partnership, doing business under the name of Chernus Construction Company, entered into a contract with the defendant acting through the Department of Commerce, Civil Aeronautics Administration, for the grading, draining, fencing, conditioning, and seeding of the El Dorado, Arkansas Airport. This was a unit price contract and

the total consideration was to be based on the quantity of work performed.

On July 1, 1943, defendant gave the contractors notice to proceed with the work. They began the work July 12, 1943. The contract was completed and accepted by the defendant August 11, 1944.

March 18, 1944, the partners comprising Chernus Construction Company, assigned all of their interest and claims in the contract to Palumbo Excavating Company. Subsequently, on January 2, 1945, all the interest and claims of the Palumbo Excavating Company in the contract were assigned to the plaintiff, Samuel S. Palumbo.

The contract provided for completion of the work within 100 calendar days after the effective date of notice to proceed. The work was thus scheduled to be completed on October 8, 1943, but it was actually completed on August 11, 1944. This was 408 days after the effective date of the notice to proceed. The contract time of 100 days was extended 176½ days by the defendant through issuance of stop orders, as provided for in the contract and plaintiff was charged with 131½ days' delay.

Shortly after the work had been completed and accepted by the defendant, the plaintiff was informed by the defendant's contracting officer that liquidated damages in the sum of $26,300 would be assessed against him for alleged delays of 131½ days in completing the work required under the contract. The contract provided that the contractor was to be assessed liquidated damages at the rate of $200 per day for each day of inexcusable delay in completing the work.

The plaintiff immediately objected to the decision of the contracting officer relating to liquidated damages, and on November 17, 1944, the contracting officer allowed the plaintiff an additional extension of 24 days on the contract completion time and liquidated damages were assessed against the plaintiff in the sum of $21,500, based on alleged delays of 107½ days, at the rate of $200 per day. The time was extended 14 days for delay encountered by plaintiff in getting its equipment moved to the site and 10 days because of an overrun of approximately ten percent of the expected contracted quantities. The plaintiff had also made claims, after completion of the work, involving the alleged performance of extra work under the contract which were considered and denied by the contracting officer on the merits.

The plaintiff appealed the decision of the contracting officer to the head of the department who, after consideration of the claims on the merits, affirmed the contracting officer's findings and decision on July 11, 1946, and stated that the entire matter was being forwarded to the General Accounting Office for final settlement. The General Accounting Office, on May 22, 1947, made final settlement in accordance with the decision of the head of the department except that the amount of liquidated damages was reduced by the sum of $100, for the reason that the contract did not provide for the assessment of liquidated damages for less than an entire day. In making final payment to the plaintiff, there was deducted from the contract price, otherwise due, the sum of $21,400 as liquidated damages and no payment was made on plaintiff's claims for alleged extra work, all of which claims were specifically excepted by plaintiff from the final release executed December 4, 1944.

Plaintiff contends that the late completion of the work was not chargeable to him, and that the contracting officer acted unreasonably in assessing the liquidated damages instead of granting adequate time extensions to cover the periods of delay. He further alleges that he was not fully compensated because of the failure of the contracting officer to properly credit him with extra work performed under the contract, and to pay him therefor.

The defendant asserts (1) that the plaintiff has failed to prove that proper time extensions were not given for all periods when his men were unable to work; (2) that the plaintiff is now estopped to assert these claims since he failed to make timely objections or requests for extensions as required under the contract; (3) that plaintiff was in fact fully compensated for all work completed under the contract; and (4) that in any event the decision of the head of the department which upheld the

findings and decision of the contracting officer is final and conclusive on all of the plaintiff's claims.

The plaintiff has specifically abandoned several of the claims set forth in his petition, while as to others no proof was presented at trial. Hereinafter, under appropriate headings, we will discuss briefly only those items of claims upon which evidence was introduced.

### Delay Surrounding The Notice To Proceed

Plaintiff asserts that this notice to begin work was issued too soon following the execution of the contract, i. e., 2 days, although the contract contained no restriction as to when this notice could or should be given. Plaintiff began work within 15 days after such notice to proceed, and made no objection at the time. After completion of the work plaintiff complained that this notice did not allow him sufficient time to move his equipment to the site in order to begin work effectively. An extension of 14 days was later allowed the plaintiff on this basis. The proof fails to show that plaintiff lost any working time because of this situation for which the 14-day extension did not fully compensate him.

### Stop Orders

■ Plaintiff alleges that he was not given credit for the time consumed in getting ready to resume work after each of the stop orders was lifted. Plaintiff at no time objected to the release of any of the orders with the exception of one, and the proof shows that none of the stop orders was actually released until the plaintiff had resumed work in a substantially normal matter. In fact, the defendant's resident engineer, who was in charge of the construction work, permitted the plaintiff to do substantial progress work during periods when the stop orders were in effect. Stop Order No. 10 halted work for a long period during the winter months and the plaintiff did object to its release on the basis that he did not have sufficient funds to proceed. As a result, an extension of one week was granted after which work was resumed without further objection on the part of plaintiff.

### Borrow Pits

When insufficient quantities of suitable earth for grading and filling were not available from the excavations indicated on the plans, this material was to be obtained from borrow pits designated by the resident engineer. Extra compensation was provided for borrow pit excavation, and the contractor was obligated by the contract to keep those pits drained. Plaintiff now claims that because the borrow pits became wet, he was forced to use material stockpiled in the field areas. Later when it became necessary to fill the field areas, it was necessary for plaintiff to resort to the borrow pits which resulted in longer hauls than would have been necessary if plaintiff had not previously depleted the field area stock piles. The contractor contends that this delayed the work. No request was made by plaintiff for a stop order or extension of time because of this alleged delay, nor does the evidence show that any delay was caused by first using the stockpiled material.

### Paving Contractor

Plaintiff alleges that his work on the runways was delayed by the operations of the paving contractor. The plaintiff contends that this resulted from an order given by the resident engineer which required plaintiff to work at a distance of no more than 2,000 feet ahead of the paving operations. The evidence shows that no such order was given and, in direct opposition to the contentions of the plaintiff, the proof shows that it was the faulty operations of the plaintiff which actually interfered with the paver's progress to the extent that the paver in order to maintain his progress schedule performed tasks which were properly those of the plaintiff.

### Equipment Shortage, Priorities And Repair Parts

■ Plaintiff contends that priority problems for which he was not responsible caused delays in the progress of his work because he was unable to acquire the needed equipment and repair parts, or when he did acquire them, it was only after long delays. The evidence shows defendant's representatives made all reasonable efforts

to assist plaintiff in connection with his applications for priorities, and plaintiff at no time during the progress of the work requested a time extension because of these alleged delays.

### Open Ditch Embankment

Plaintiff, when excavating for this particular ditch placed the material, as required, in an embankment for later use in filling and grading. It later developed that this soil was not needed and since the embankment bordered on a runway and reached twenty feet in height, the plaintiff was directed to level it off to a height of four feet. The plaintiff now contends that this resulted in extra work for which he should have been paid. Under the contract the contractor was obligated to do such leveling work and the evidence fails to show that the plaintiff was delayed unnecessarily in reducing the height of the embankment.

### Silt Removal

Plaintiff was required to remove silt and rock from the bottom of one of the drainage ditches in order that the ditch would meet contract specifications. Plaintiff urges that the presence of the silt and rock delayed his progress and that he was not properly credited for the time lost. Under the contract any silt removal was the responsibility of the contractor and the rock was removed without protest as part of the regular grading process. The proof does not show any loss of time because of this operation.

### Bench Marks

Before plaintiff began any work the defendant's engineering staff established and set out the original bench marks. These were placed on the center lines of the proposed runways, the only cleared area at the time. Later these marks were transferred as far as possible outside the graded area in order to have reference points for further work. These bench marks were to be the guides for all later surveying and leveling measurements. After final inspection of the project the plaintiff's engineer called the resident engineer's attention to three bench marks which were found to be in error. Plaintiff alleges that because of these errors he was "ordered" to go back and regrade the entire area at a cost of $57,000 thus considerably delaying the progress of the work. The evidence shows that there was no regrading of the entire area due to erroneous bench marks, nor does the proof show that the contractor was delayed or put to additional expense because of the three bench marks, admittedly in error, but found not to have been used in the grading operation. The only regrading shown to have been done resulted from the plaintiff's failure to grade one particular area according to the specifications. No protest or request for a stop order or extension of time had been made by plaintiff at the time of the alleged regrading.

### Construction of Drainage Ditches, Levees, and Valleys for Surface Drainage

This work was called for under the contract and the proof fails to show that plaintiff lost any working time by reason of alleged "extra" work in constructing these items.

### Soil Compaction

Plaintiff encountered difficulty in compacting soil to contract specification on a portion of two of the runways. On the first, after being directed to aerate or dry out the soil, as the plaintiff was required to do in the first instance, proper compaction was obtained. On the second, a type of clay not encountered before on the job was unearthed. Plaintiff alleges that these two situations entailed difficulties which resulted in delaying his progress and requiring added work for which he was not compensated. The facts, as found, are that as to the first item the plaintiff was obligated under the contract to keep the soil properly aerated, and as to the second a relaxation of the contract specifications was allowed so that the contractor would not be delayed. There is no satisfactory proof of excess material and labor costs as a result of compaction difficulty. The plaintiff made no protests as to any delay occasioned by the compaction difficulties.

### Refilling and Regrading Work

Certain areas which had been filled and graded suffered some erosion as a result of

weather conditions. Prior to final approval plaintiff was directed to refill and regrade these areas which he did without protest. Later, however, the plaintiff claimed that he was entitled to be compensated for this work and entitled to a time extension because of the delay involved. The evidence shows that this work was part of the finishing operation required of plaintiff under the contract and that plaintiff lost no time by reason of such regrading and refilling.

## Taxiway No. 3

In setting grade stakes on one side of this taxiway, the defendant's layout staff made an error which lowered the side of the taxiway eighth-tenths of one foot. Plaintiff recognized the error and reported it to the resident engineer. Plaintiff alleges that because a portion of the grading on the taxiway had already been done, he was forced to regrade the area a second time. The plaintiff made no protest with reference to this until many months after the alleged regrading was done. This error was corrected by resetting the height of the stakes on the other side of the taxiway which had not at that time been graded. As a result no extra grading was necessary and the taxiway instead of rising in the middle and sloping on each side, as originally planned, sloped entirely across from one side to the other. No extra cost or time loss was occasioned by these stake errors.

## Conditioning and Smoothing Seeded Areas

Under this claim, plaintiff alleges that he had performed conditioning and smoothing work on that area of the airport that had been seeded. This work was required under the contract and plaintiff claims that he was not paid therefor. The plaintiff is in error in his contention as to this item since he did not perform any work under the contract specifications upon which this particular claim is based. See Finding 43. The specifications in question applied only to work to be done on ungraded areas, i. e., where a cultivated field or surface at ground level existed and only a very small amount of smoothing was necessary to finish the area. The evidence shows that no such area was present on the site of this

project since the entire area was either cut (tree covered) or fill (low land) for which the plaintiff was paid in accordance with the applicable grading specifications. This protest of plaintiff was not made until months after the work giving rise thereto was completed.

Under the original contract specifications the contractor was to grade off the shoulders flush with the edge of the runways. The plaintiff therefore stockpiled in the areas adjacent to the runways sufficient soil for that purpose. However, the defendant's engineers later required that the original specifications be altered and the shoulders dropped approximately two inches below the edge of the runways. This was done in order to produce better drainage on the surface of the runways. As a result of this change the plaintiff had on hand, close to the runways, more soil than was needed to grade the shoulders. This excess was then removed by the plaintiff involving alleged additional cost and further delay in completion. There is no evidence to establish the amount of time lost because of this change nor is there sufficient proof in the record as to the extra cost, if any. The plaintiff was unable to present his cost records. The evidence fails to show that the plaintiff requested an extension of time because of this change.

In so far as plaintiff's claims for the remission of liquidated damages are concerned, the proof shows that he did not make timely objections or requests for extensions as required under Article 9 of the contract. This article reads in part as follows:

"* * * Provided, That the right of the contractor to proceed shall not be terminated or the contractor charged with liquidated damages because of any delays in the completion of the work * * * if the contractor shall within 10 days from the beginning of any such delay * * * notify the contracting officer in writing of the causes of delay, who shall ascertain the facts and the extent of the delay and extend the time for completing the work when in his judgment the findings of fact justify such an extension, and his findings

456

of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal, within 30-days, by the contractor to the head of the department * * * whose decision on such appeal as to the facts of delay * * * shall be final and conclusive on the parties hereto."

■■ The policy behind such provisions is one of enabling disputes concerning delays which may arise under contracts to be handled expeditiously by the contracting officer in accordance with existing facts and circumstances known at the time. In the absence of a showing sufficient to constitute a waiver by defendant of timely objection compliance with them is mandatory before resort to the courts may be made. United States v. Blair, 321 U.S. 730, 736, 64 S.Ct. 820, 88 L.Ed. 1039; United States v. Holpuch Co., 328 U.S. 234, 240, 66 S.Ct. 1000, 90 L.Ed. 1192. With the exception of one claim based on delay, the plaintiff did not make the timely objections required under Article 9. The plaintiff's objections which formed the basis for all other claims due to delay were not called to the attention of the defendant's representatives until after the plaintiff's performance under the contract had been completed. In connection with Stop Order No. 10, the plaintiff did protest immediately upon being informed that it was to be released, but after a further extension of one week he acquiesced in the resident engineer's ruling to begin work and did not within the 30-day period appeal that ruling as required under the contract.

The plaintiff relies upon De Armas v. United States, 70 F.Supp. 605, 108 Ct.Cl. 436, in which this court granted the contractor a reduction in assessed liquidated damages on the ground that he was entitled to further time extensions not allowed by the contracting officer. Plaintiff asserts that while the contract in the De Armas case, supra, contained requirements identical with Article 9 here, the contractor was permitted to recover even though his notice to the contracting officer of delays in work by reason of adverse weather conditions was not given until some time later. The question of timely objection was not raised by the parties in that case or discussed by the court in its opinion, although the court did make a finding as to the date when notice of the delays was given to the contracting officer. The construction work involved in the De Armas case, supra, was on jetties at the mouth of the Mississippi River and storm conditions were the basis for the contractor's demands for additional compensation and time extensions. Shortly after the occurrence of the storm the contractor informed the contracting officer of the damage done, and the contracting officer directed the removal and replacement of the damaged material. Only a portion of the work required under the contract had been completed at the time of the storm. However, the contractor was notified that some of the replacement work was to be done at his expense. Nine days after this notification the contractor appealed this ruling of the contracting officer to the head of the department, and on the same day made written demand on the contracting officer for time extensions because of the delays caused by the storm. This we believe was timely notice under the terms of the contract and presented a situation in which the facts differ materially from the facts in this case.

■■ In the case at bar the plaintiff, although he made no protest or request for extension of time, as required by Article 9 of the contract, during the prosecution of the work, except in one instance, did file requests for further extensions of time and remission of liquidated damages, and also presented claims for certain extra work, after all contract work had been completed; and these claims were considered on their merits and were denied by the contracting officer and the head of the department.

Assuming, as we may under the circumstances of this case, that the contracting officer and the head of the department waived the failure of plaintiff to make timely protest as to alleged delay and timely claims for alleged extra work, the plaintiff is, nevertheless, not entitled on the record to recover. The evidence of record sustains rather than disapproves the correctness of

the decisions of the contracting officer and the head of the department, with the slight modification made by the Comptroller General.

The record shows that the plaintiff was not delayed by the acts of the defendant and that he was given adequate time extensions to cover all periods when his men were unable to work. It also appears that in respect to the stop orders the resident engineer was quite liberal in their application and on all occasions permitted the plaintiff to work during the periods when the stop orders were effective. As for the alleged extra work, the plaintiff's proof fails to disclose that the contractor performed work for which he was not compensated in accordance with the terms of the contract.

 Article 15 of the contract provided as follows:

"* * * Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed."

This is the standard Disputes Clause in Government contracts and its validity has been upheld. United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256. The questions here in dispute come within the purview of this clause and under it the decision of the head of the department or his duly authorized representative is final and conclusive. United States v. Wunderlich, 342 U.S. 98, 100, 72 S.Ct. 154, 96 L. Ed. 113.

The plaintiff is not entitled to recover, and the petition is dismissed.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and WHITAKER, Judges, concur.