Jack CARMAN, George S. Carman, and Ralph R. Kirchner (Trading as Carman-Kirchner Construction Co.)

v.

UNITED STATES.

No. 116–52.

United States Court of Claims.

Oct. 8, 1958.

Wesley E. Disney, Oklahoma City, Okl., for plaintiffs.

Thomas J. Lyndon, Washington, D. C., with whom was Acting Asst. Atty. Gen., Geo. S. Leonard, for defendant.

LITTLETON, Judge.

Plaintiff seeks to recover additional compensation for extra work performed in reclearing certain areas in connection with its contract to clear an area in the vicinity of the Heyburn Dam Project. Plaintiff contends that it is entitled to the extra compensation on the ground that the order to reclear the area in question amounted to a change under Article 3 of the contract, or in the alternative, that the flood which occurred on May 19, 1949, and which occasioned the extra work, was a changed condition within the meaning of Article 4 of the contract. Defendant urges that plaintiff has failed to establish a claim under either Article 3 or Article 4 of the contract.

On December 16, 1948, plaintiff entered into a contract with the Department of the Army, Corps of Engineers, Tulsa District, Tulsa, Oklahoma, under which plaintiff agreed to clear an area that was to become the reservoir of the Heyburn Dam Project then being built on Polecat Creek near Heyburn, Oklahoma. The contract was awarded on the basis of competitive bidding. Plaintiff's bid was $94,958.50. The next lowest bid was approximately $121,000 and the estimate prepared by the Corps of Engineers had been $161,000.

By the middle of May, 1949, the work had progressed in a satisfactory manner and approximately 33 percent of the entire clearing job was then completed. Plaintiff had received partial payments for the completed work as provided in Article 16 of the contract (finding 6). Article 16(c) provided as follows:

"(c) All material and work covered by partial payments made shall thereupon become the sole property of the Government, but this provision shall not be construed as relieving the contractor from the sole re-

sponsibility for all materials and work upon which payments have been made or the restoration of any damaged work, or as a waiver of the right of the Government to require the fulfillment of all of the terms of the contract."

On May 19, 1949, a severe flood occurred in this area. Information available on floods in the area of Polecat Creek (contained in annual publications of the Department of the Interior) indicated that on only one prior occasion had the water level exceeded the level it reached in May of 1949, although in 1948 and in 1947 water levels reached stages not far from the stage reached in 1949 (finding 8). As a result of this flood, a large amount of floatable material was washed into the area which plaintiff had already cleared and for which it had received partial payment. In addition, debris consisting of trees, brush and other material which the plaintiff had cut or collected and put into piles sometime prior to the flood, was washed into areas which plaintiff was then in the process of clearing. Some of the material which was washed into the area was material which, under the terms of the contract, plaintiff had removed from the cleared area and would have burned in accordance with paragraph 1–03 of the specifications if it had not been for the flood on May 19.

While the area was at flood crest, plaintiff had discussions with representatives of the defendant and was advised that it would be required to clear up the area which had been previously cleared, but plaintiff was not told that it would be paid any additional compensation for such reclearing work. Plaintiff notified the representatives of defendant at the site of the work that in its opinion the additional work occasioned by the flood should be treated as an extra under the contract and that plaintiff should be paid for doing such work.

Plaintiff was granted a 43-day extension of time within which to complete the work. Twenty-three days of the total time extension were allowed because of adverse weather conditions, and 20 days were allowed for the work of cleaning up after the flood.

On October 18, 1949, plaintiff presented a claim in the amount of $16,332.92 to the contracting officer for the cost of reclearing areas cluttered by the flood. Plaintiff urged its claim under Article 3 and Article 4 of the contract and submitted therewith a copy of its payroll and a statement of the expense of reclearing. On November 16, 1949, the contracting officer denied the plaintiff's claim on the ground that the plaintiff had performed only the clearing work required by the contract and that under the terms of the contract the Government was not responsible for the additional expense caused by the flood. On December 13, 1949, the plaintiff appealed the contracting officer's decision to the Chief of Engineers in Washington, D. C., and the contracting officer prepared findings of fact to accompany this appeal. A hearing was held before the Corps of Engineers' Claims and Appeals Board at which testimony was taken and plaintiff was represented by counsel. The Board denied plaintiff's claim on the ground that in its opinion Article 4 did not obligate the Government to compensate the contractor for additional clearing work not caused by the Government but brought about by an act of God in the form of a flood during the course of the work. It was the opinion of the Board that under Article 10 of the contract plaintiff had the responsibility of delivering the work complete and undamaged to the defendant and that the risk of damage to the work during the course thereof was assumed by the contractor. The Board did not discuss the theory of recovery advanced by plaintiff under Article 3 of the contract. Plaintiff filed two requests for rehearing which were denied.

Paragraph GC–3 of the contract specifications required the contractor to investigate the site and satisfy himself as to the nature and location of the work, general and local conditions, particularly those bearing upon, among others, the disposal of material, the uncertainties of

the weather, river stages, and similar conditions at the site. Paragraph GC–12 of the specifications required the contractor to keep the construction area, including storage areas used by him, free at all times from accumulations of waste material or rubbish. Paragraph 1–03 of the specifications provided that all material cleared from the specified area should be burned or completely removed by transporting it from the area. This paragraph provided that the burning or removal of material should follow as closely as practicable the clearing operations "so that in case of high water the brush or other debris will not obstruct or damage the outlet structure at the dam." At various times prior to the flood in May 1949, representatives of the defendant had urged plaintiff to follow its clearing operations more closely with its burning operations.

 The question for decision is, in general, who must bear the loss from a destruction of part of the work which the contractor has contracted to do while the work is still in an unfinished stage, where the destruction is brought about by an act of God and through no fault of either contracting party. We are of the opinion that under the circumstances of this case the requirement by the defendant that plaintiff reclear the area was not an order to perform extra work or a change in the plans and specifications requiring a change order within the meaning of Article 3 of the contract. The contract required that the area be cleared and that is all that the contracting officer ordered the plaintiff to do following the flood which damaged part of the area which had already been cleared. We are further of the opinion that the happening of the flood in May 1949 was not a "changed condition" within the meaning of Article 4 of the contract. This was an area which was subject to seasonal floods and the dam at the site was being constructed for the purpose of flood control. The information on floods which was available to the plaintiff, indicated that floods in that area in the summer-

time were to be expected. Furthermore, the provisions in the contract calling for the disposal of material cleared from the area so that, in the case of high water, the cleared material would not wash back into the area, indicate that difficulties from flooding were within the contemplation of the parties when they entered into the contract.

If the contract in suit had provided for payment on the basis of the amount of materials the plaintiff removed from the area, and the flood had increased the amount required to be removed, then, of course, the Government would have had to pay for all materials actually removed, although the additional work was caused by an act of God in the form of a flood. Tacoma Dredging Co. v. United States, 52 Ct.Cl. 447. See also Arundel Corporation v. United States, 103 Ct.Cl. 688 in which it was held that plaintiff was not entitled to an increase in the price per cubic yard of dredging material under the contract where a hurricane resulted in a smaller quantity of material to be dredged than had been estimated and anticipated under the contract.

Under the circumstances of this case, we are of the opinion that the only relief to which plaintiff was entitled under the contract, was the relief which was given it by the Government, that is, an extension of time for delays caused by the flood. Where the work was damaged before completion by the forces of nature and without anyone's fault, plaintiff was under an obligation to repair such damage and complete the project as required by the contract. The Government was under no obligation to reimburse the plaintiff for the extra costs incurred in completing the contract work. De Armas v. United States, 108 Ct.Cl. 436, 70 F. Supp. 605.

The plaintiff is not entitled to recover and the petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.