**BRUNO NEW YORK INDUSTRIES CORP.**

**v.**

**The UNITED STATES.**

No. 393–59.

United States Court of Claims.
March 12, 1965.

Herrick K. Lidstone, New York City, for plaintiff.

Edwin J. Reis, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM:

In this contract case, which is to be considered on the record made before the Armed Services Board of Contract Appeals, both parties have moved for summary judgment. These motions were referred to Trial Commissioner William E. Day, under Rule 54(b), for his opinion and recommendation for a conclusion of law. Commissioner Day has submitted an opinion holding for the plaintiff on the first claim of the petition and for the defendant on the second claim. He has recommended that (a) the defendant's motion should be allowed as to the second claim and the petition dismissed as to that claim, and (b) the plaintiff's motion should be allowed as to the first claim and judgment entered for plaintiff for $31,-000. The plaintiff has not sought review of the Commissioner's opinion and recommendation as to the second claim, and the court adopts them as the basis for its judgment on that claim.

On the first claim, the defendant has sought review, oral argument before the court has been had, and the court has considered the briefs filed by the parties. On that claim, too, the court agrees with the Commissioner's recommendation and opinion, and adopts them, as supplemented by the remainder of this opinion, as the basis for its judgment on the claim.

 Since the filing of the Commissioner's opinion, the court has reiterated the ruling that issues of interpretation of the language of contract specifications are issues of law on which the decision of the Board of Contract Appeals is in no way binding, even though those issues may be involved in a proceeding to obtain an equitable adjustment under the Changes article of the contract. Kaiser Industries Corp. v. United States, Ct.Cl., 340 F.2d 322, decided Jan. 22, 1965; C. J. Langenfelder & Son, Inc. v. United States, Ct.Cl., 341 F.2d 600, decided Feb. 19, 1965. The Commissioner's opinion fully accords with that position.

 The defendant contends that the parties' stipulation before the Board of Contract Appeals, to which Commissioner Day refers, should not be read as conceding that the only issue left in the case was whether CCN No. 1 had effected a change in the contract within the ambit of the Changes article, but, rather, as fixing the litigable issue to be whether or not there was a compensable change in the contractor's work requirements or actual work obligation. We have reviewed the pertinent wording of the stipulation as well as the proceedings before the Board (including the parties' briefs at that stage of the litigation), and we cannot accept defendant's present interpretation of the stipulation. In our view, the stipulation should properly be read (just as it is worded) as leaving for decision only the question of whether CCN No. 1 effected a change within the purview of the Changes article.[1] If that issue is answered affirmatively, the parties have entirely removed the issue of compensability by stipulating that the plaintiff would be entitled to $31,000. We agree with Commissioner Day, for the reasons he gives, that an affirmative answer is required. It follows that under the parties' arrangement the plaintiff should have judgment in the agreed amount.

Plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied as to the first claim of the petition. On that claim, the plaintiff is entitled to recover the sum of thirty-one thousand dollars ($31,000) and judgment is entered for plaintiff in that amount. Defendant's motion is granted and plaintiff's motion is denied as to the second claim of the petition, and that claim is dismissed.

OPINION OF THE COMMISSIONER

This is a contract case which is before the court on cross-motions for summary judgment. The plaintiff's petition is in two counts. By the first count it claims an equitable adjustment in the contract

---

1. Before the Board, defendant's counsel took the position, as we understand the record, that CCN No. 1 effected no change at all in the specifications.

price on account of an alleged change in the contract requirements by reason of a written order amending the contract specifications. The contracting officer refused to increase the contract price on account of this specification change. The plaintiff appealed this refusal to the Armed Services Board of Contract Appeals (hereinafter referred to as ASBCA) and was there unsuccessful.

The second count of the petition relates to a claimed interference by the defendant with plaintiff's production in the operation of priority controls on needed electrical components and by the defendant's failure to assist the plaintiff by expediting the delivery of such components from the plaintiff's supplier. The claims made in the second count of the petition had not been made the subject of an appeal under the "disputes" clause of the contract.

The plaintiff's motion attacks the ASBCA decision (1) as an erroneous and incorrect interpretation of the contract between the parties, (2) that it is based on findings of fact not supported by the record, and (3) that it is not based upon substantial evidence. Further, the plaintiff says that the failure of the defendant to render an equitable adjustment in price under the "changes" article in the contract for costs resulting from the issuance of Contract Change Notification No. 1 (hereinafter called CCN No. 1), insofar as it changed the capacitor specification of the contract in suit, constituted a breach of contract. The defendant argues that the plaintiff has failed to show a lack of substantial evidence supporting the findings of the ASBCA, thus rendering final the decision based on the findings by that Board.

The plaintiff has filed in support of its motion the entire administrative record, including the contract file, the transcript of the testimony of witnesses, and the exhibits which were considered by the ASBCA in arriving at its decision. In addition, the plaintiff supported the motion by an affidavit of the plaintiff's president and also by an affidavit of plaintiff's counsel of record.

The "changes" and the "disputes" articles, incorporated into the general provisions of the contract in suit, were the usual articles contained in Standard Form 32, General Provisions (Supply Contract).

The plaintiff on March 27, 1956, was awarded a contract to furnish to the Air Materiel Command at Wright-Patterson Air Force Base, Ohio, 16,283 headset adapters (electronic devices) at a unit price of $26.16. The award was made pursuant to competitive bids.

Three prototypes of the contract item, called "first articles," were to be submitted for qualification tests within 60 days of the date of award. Production deliveries were to commence 60 days after Government approval of the "first articles." The contract required that the contract items be produced in accordance with the specification described as Spec. MIL–A–8416A, dated March 17, 1955. This specification incorporated therein, by reference, Spec. MIL–E–5400. The latter specification provided:

"3.1.3.2 *Electrolytic Capacitors.*— The use of electrolytic capacitors other than tantalum in a particular equipment shall be subject to specific approval by the procuring agency, based upon detail information submitted by the contractor with regard to their necessity, proposed use, and operating conditions in the equipment. The use of tantalum capacitors is governed by the nonstandard parts approval procedures given in paragraph 3.1.1.2."

Paragraph 3.1.1.2.2, as amended January 25, 1954, provides, in part, as follows:

"3.1.1.2.2 *Service Test, Preproduction, and Production Equipment.*— Except for metals and nonelectrical hardware items used for mechanical linkage and attachment, any part or material which is not covered by a specification listed in ANA Bulletin No. 400 is considered nonstandard, and the request for the use of such parts and materials shall be submitted to the procuring activity for approval prior to its use in the equip-

ment. Examples of approvals which must be requested include the following:

$$* \quad * \quad * \quad * \quad *"$$

The plaintiff incorporated into each contract item four capacitors of tantalum electrolytic type PP8B30A2, Fansteel Metallurgical Co. The plaintiff says that it did so because it had been ordered to do so by CCN No. 1.

CCN No. 1, issued by an authorized contracting officer on September 11, 1956, provided, in pertinent part, as follows:

"9. Pursuant to the clauses of the contract relating to changes, the above named Contractor is hereby authorized and directed to accomplish the changes listed below in respect to the articles called for under said contract as the same has heretofore and may·hereafter be amended; subject, however, to the terms and provisions set forth on the reverse side hereof. Whenever both a purchase order number and a contract number are shown above, both numbers will be used in any shipping paper, packing sheet, invoice, correspendence, or related document, the purchase order number preceding the contract number."

DESCRIPTION OF CHANGES:

"a. The contractor may deviate from MIL-T-25380/1 as follows:

1. Delete all degradation rate tests.

2. Change Storage Temperature of '100° C' to '85° C'.

3. Change collector-to-base leakage current from '10 microamperes' to '16 micro-amperes.'

4. Change beta spread from '33 to 66' to '20 to 66'.

"b. Contractor shall comply with Amendment No. 2 dated 1 February 1956 to Specification MIL-A-8416A.

"c. These changes are to be made effective immediately."

The Amendment 2 to specification MIL-A-8416A provided, in pertinent part, as follows:

"Page 9: Add paragraph 3.11: '3.11 *Capacitors.*—The four capacitors shown in figure 3 shall be tantalum electrolytics type PP8B30A2, Fansteel Metallurgical Co., or equal.'"

The plaintiff requested payment of some $106,000 for complying with CCN No. 1. The contracting officer denied that any equitable adjustment was due the plaintiff. The appeal to the ASBCA followed.

After pleadings had been filed by the parties with the ASBCA but before any testimony had been received, a formal stipulation was entered into by the parties, signed by counsel for the plaintiff, the trial attorney for the Government, and also by the contracting officer (Government). By the terms of this stipulation, certain of the claims made under CCN No. 1 by the plaintiff, which had been denied by the contracting officer, were settled with the contracting officer's agreeing to amend his findings as to those claims and also agreeing to the payment of an additional $68,000 to the plaintiff, both actions having since been accomplished.

The pertinent portions of the stipulation which bear upon the claims under the first count of plaintiff's petition are as follows:

"6. The parties further stipulate and agree that the only issue remaining in the appeal is with respect to the second ground as noted in the appellant's Complaint upon which appellant seeks relief, which second ground relates to an alleged change in capacitor specifications.

"7. The parties are agreed that appellant intended to use tansitor capacitors.

"8. The parties are agreed that in the event the Board shall find that the Government effected a change under the Changes Article with respect to capacitors, the appellant is entitled to an equitable adjustment

in the amount of $31,000.00; otherwise the appeal should be denied."

The dispute between the parties had thus been reduced to the single question—Did the issuance of CCN No. 1 constitute a change under the contract? This kind of a dispute requires an interpretation of the language of the contract specifications and is, therefore, a legal question on which the administrative decision of the ASBCA is not final as against the plaintiff and which is also not binding upon this court. See 41 U. S.C. § 322; W. H. Edwards Engineering Corp. v. United States, 161 Ct.Cl. 322, 328 (1963), and cases cited therein.

■ Although the ASBCA hearing officer [1] recognized (TR 9) that this was the sole issue for determination, the Board's decision did not reach or did not decide this issue. On the other hand, the decision of the Board concluded that before CCN No. 1 had been issued the plaintiff had already decided to use the capacitors called for by CCN No. 1. Although some 300 pages of testimony were offered at the hearing, a large part of it was directed to whether the defendant's project engineer did or did not insist that the only capacitor he would approve was the type which the plaintiff did use in the contract item. It would appear that whether or not the project engineer insisted upon the use of a particular type of capacitor is not very helpful in resolving the issue before the court. It was shown by the exhibits introduced that CCN No. 1 was issued at the request of the plaintiff. This, too, has little bearing on the question as to whether a change in the contract was effected by the issuance of CCN No. 1. It is patently clear that a change in the contract was effected by the issuance of CCN No. 1 when it is observed that under the specifications, as so amended, the capacitors to be incorporated as part of the finished contract item were required to be of the substance called tantalum, whereas under the specifications before the change other substances might have been used under specified circumstances.[2]

■ All that was necessary was that specific approval of the procuring agency was needed and this was to be based upon information supplied by the contractor as to the necessity for a substitute, its proposed use, and the operating conditions in the equipment. It is to be noted that CCN No. 1 was issued "pursuant to the clauses of the contract relating to *changes* * * *." (Italics supplied.) Since a change in the contract was effected by the issuance of CCN No. 1 and since the parties stipulated in the ASBCA proceeding as to the amount of the equitable adjustment, $31,000, the plaintiff is entitled to judgment on its first count in this amount.

■■ The defendant's contention that that part of the stipulation relating to the matter of damages was entered only for the purposes of the proceeding before the ASBCA requires but little comment. A formal written stipulation in any litigation is entered into in order to obviate the necessity to adduce proof in support of the allegations of a pleading. That was quite clearly the purpose of the stipulation to which reference has been made. Having entered into the stipulation neither side offered any proof as to the amount of damages, the parties relying on their written agreement and upon the Board to carry out that agreement if called upon to do so. This court will now do so.

The substance of the plaintiff's second claim is that the defendant breached its contract with the plaintiff in that it interfered with the plaintiff's production by directing the plaintiff's supplier to furnish at a greatly reduced rate the elec-

---

1. One hearing officer heard the evidence. He rendered his decision through an opinion concurred in by two other members of the Air Force Contract Appeals Panel which became the decision of the entire ASBCA upon the filing of statements of the chairman of the respective panels of the Board signifying that review by the full Board was not required.

2. See the provisions of Spec. MIL–E–5400, ¶ 3.1.3.2, pp. 4–5.

tronic components that the plaintiff needed in greater volume.

■ The Electronics Production Resources Agency was the Government agency which exercised priority controls over the production of plaintiff's supplier. The issuance of directives by this agency, though it had the effect of restricting plaintiff's production of the contract items, was an action of the defendant in its sovereign capacity for which it is not liable. Gothwaite v. United States, 102 Ct.Cl. 400 (1944); J. F. Barbour & Sons v. United States, 104 Ct.Cl. 360 (1945); Pearson, Dickerson, Inc., et al. v. United States, 115 Ct.Cl. 236, 261–262 (1950); Barnes v. United States, 105 F.Supp. 817, 123 Ct.Cl. 101, 124–125 (1952); Henry A. Carey, Jr., et al. v. United States, 326 F.2d 975, 164 Ct.Cl. 304 (1964).

The court said in Gothwaite, supra (p. 401):

"The defendant demurs because it says the petition does not state a cause of action. It says the defendant is not liable for delays in the performance of contracts caused by the exercise of its general and public acts as a sovereign.

"Defendant is clearly correct. The War Production Board is an agency created by the President and engaged in carrying out the powers conferred upon him by Congress in the Second War Powers Act of March 27, 1942 (56 Stat. 176, 178). Under that Act the President was empowered to allocate materials essential to the national defense and to give priority in the obtaining of such materials to contractors engaged in work connected with the national defense. He was expressly authorized to exercise these powers through an agency appointed by him.

"This was an Act of a general and public character affecting all persons situated similarly to plaintiff. It authorized the exercise of sovereign powers in the defense of the nation.

That the Government is not liable for such acts needs no argument. We have so held from the creation of this court. Deming v. United States, 1 Ct.Cl. 190; Jones v. United States, 1 Ct.Cl. 383; Wilson v. United States, 11 Ct.Cl. 513; Horowitz v. United States, 58 Ct.Cl. 189."