**JOHN McSHAIN, INC.**

v.

**The UNITED STATES.**

No. 225–61.

United States Court of Claims.

April 14, 1967.

---

Austin P. Frum, Washington, D. C., for plaintiff. Thomas S. Jackson, Washington, D. C., attorney of record. James R. Treese, Robert M. Gray, Francis L. Young, Jr., Jackson, Gray & Laskey, Washington, D. C., of counsel.

George M. Beasley III, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This contract case was referred to Trial Commissioner William E. Day, pursuant to Rule 57(a), for findings of fact and a recommendation for a conclusion of law. The commissioner has filed his report containing an opinion, proposed findings of fact, and a recommended conclusion of law. He would hold that plaintiff is not entitled to recover and therefore its petition should be dismissed. The defendant accepts the commissioner's opinion and proposed legal conclusion, but made objections to certain of his findings. The plaintiff accepts the commissioner's findings but excepts to his recommended conclusion of law. Briefs have been filed and there has been oral argument.

The court agrees with the opinion, findings, and recommended conclusion of the trial commissioner and adopts them with modifications, together with this opinion, as the basis for its judgment in this case. However, plaintiff

has urged before the court a legal theory not dealt with by the commissioner in his opinion. In short, the plaintiff argues that the United States should be responsible for the cost of repairing damage caused by the District of Columbia because the District was the agent of the United States acting under the Federal Government's direction when the District rerouted the water main. This contention must be rejected.

■ In the first place, the parties stipulated at the pretrial conference that "[t]he cave-in which occurred on the night of September 12–13, 1955, was not the result of any fault on the part of the plaintiff or the defendant." Since what plaintiff is seeking to do before this court is to impute fault to the defendant through the actions of its alleged agent, the District of Columbia, it would seem that plaintiff is precluded by the stipulation from even raising this question of agency. A stipulation is a judicial admission binding on the parties making it absent special considerations. Bruno New York Industries Corp. v. United States, 342 F.2d 75, 79, 169 Ct.Cl. 999, 1007 (1965); Garner v. United States, 161 Ct.Cl. 73, 75 (1963); McNamara v. Miller, 106 U.S.App.D.C. 64, 269 F.2d 511, 515 (1959); 9 Wigmore, Evidence § 2590 (3rd Ed. 1940). Plaintiff has made no application to the commissioner or to the court to modify the stipulation.

■ Plaintiff, however, maintains that it was clearly understood by the parties that the stipulation would not affect the liability *vel non* of the defendant for the negligent acts of others under its control. Counsel for defendant disputes that this was in fact the parties' understanding. Even were we to agree with plaintiff that the stipulation is not a bar to a finding of liability based on the alleged negligence of the District of Columbia acting as the agent of the United States, it is clear that no such agency existed. Article 1, Section 8 of the Constitution, granting Congress the

exclusive power to enact legislation for the District, does not make the District the agent of the Federal Government. Nor does it make the Federal Government liable for the actions of the District. Sweeney v. United States, 285 F.2d 444, 447, 152 Ct.Cl. 516, 522, (1961); Bundy v. United States, 21 Ct.Cl. 429, 434 (1886); O'Toole v. United States, 106 F.Supp. 804, 806–807 (D.Del.1952) rev'd on other grounds 206 F.2d 912 (3rd Cir. 1953).

■ Moreover, there is no proof that the water main was rerouted by the District of Columbia under the direction and supervision of the United States. Because the District had a water main which ran through the site of the new building, the District had to move the line so that plaintiff could excavate. Subsequently the new line burst and inundated plaintiff's excavation site. These are the facts of this case. Plaintiff has failed to offer any evidence that the United States played any part in the rerouting other than the fact that it was the Government's contract for the Senate Office Building which resulted in the rerouting. That evidence is not enough to establish an agency relationship; the District of Columbia was not the agent of the United States at the time it committed its allegedly negligent acts.

Accordingly, plaintiff's petition is dismissed.

Commissioner Day's opinion,* as modified by the court, is as follows:

This is a contract case in which the issue is quite simply which contracting party must bear the loss resulting from damage to contract work, substantially (but not fully) completed at the time the damage was inflicted, without fault of either party. The controversy stems from a contract between the plaintiff and the defendant, acting through the Architect of the Capitol for excavation, concrete footings and mats for the new United States Senate Office Building, for a consideration of approximately

---

* The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and Rule 57 (a).

$750,000. The plaintiff agreed by the contract to accomplish all of this work. The defendant agreed that it would make partial payments, monthly, as the work progressed, and upon completion and acceptance of all the work, that the contractor would be paid the amount due under the contract upon its submission of a release of claims. The work was prosecuted by the plaintiff's forces until August 29, 1955, when its job superintendent advised the defendant's project engineer that the work was completed and that the plaintiff desired acceptance of the work. There remained to be paid the balance of about $180,000 of the contract price at this time. The defendant's inspection force made an inspection of the work and found 10 items of work remaining to be accomplished. One of these items was not a contract requirement at all. It related to the furnishing of inscribed silver shovels to be used in the ground-breaking ceremonies. This list was given to the plaintiff on September 9, 1955 (a Friday) when its representatives were discussing with the defendant's representatives the question of the proper amount which should be paid for an extra under a change order. It is to be noted particularly that the plaintiff's general manager, who was present at this meeting, took no exception to the fact that 9 of the 10 items listed were yet to be accomplished. It is clear from the evidence that none of the items involved substantial work and in the aggregate could fairly be regarded as minor. They were described during trial by both parties as punch-list items. No work of any kind was done at the site on September 9th. On Saturday, being a non-work day, no work of any kind was performed at the site. On Monday, the plaintiff had removed all of its equipment from the site with the exception of a few hand tools. On that day two of plaintiff's laborers were working there, being engaged in sweeping and breaking off of protruding nails and tie wires. One of the laborers returned to the site at 5 a. m. on Tuesday, September 13, 1955, with the other arriving at 6 a. m. They were similarly engaged, when, at about 6:45 a. m. a cave-in occurred on the east side of the excavation, causing the sheet piling in the immediate area to be twisted, bent and covered with very large quantities of wet earth, and also inundating the entire excavation with water.

The District of Columbia Water Department had recently completed the rerouting of a water main. A break in the main caused the resulting damage to the contract work. The parties have stipulated that the cave-in was not due to the fault of either plaintiff or defendant herein. Both parties disclaimed responsibility for the cost of repairing the damage caused by the cave-in. The evidence shows that, although the work was substantially completed when the cave-in occurred, there yet remained a small amount of work related to 5 of the 10 punch-list items.

It further shows that, at the time of the cave-in, the plaintiff had not requested final inspection and none had been made by the inspection forces of the defendant. It is also clear that the work had not been accepted by the defendant.

The Architect of the Capitol insisted that the plaintiff repair the damage to the work at its cost. The work was repaired by the plaintiff's forces. It was then inspected and found to have been satisfactorily completed. Thereafter, the plaintiff submitted its final invoice for the balance remaining unpaid. There had, in the meantime, been a further progress payment of some $57,000. As one item of the final invoice, the plaintiff claimed some $23,000 as the cost of repairing the damage caused by the cave-in. The defendant paid some $123,000 as a final payment, refusing to pay the $23,000 item as the cost of repairing the damage caused by the cave-in.

It is the plaintiff's contention first, that all contract work was completed by the plaintiff but that even though it be found that some minor work remained to be done, the contract was completed as a matter of law, and thus, the risk of loss by reason of damage to the completed work should be borne by the de-

fendant. A further contention made by the plaintiff is that under the changed conditions clause of the contract, Article 4, the plaintiff is entitled to a change order or modification because it encountered an "unknown condition of an unusual nature" by reason of the broken water main. The only case which plaintiff cites in support of its position as to a changed condition is Arundel Corp. v. United States, 96 Ct.Cl. 77 (1942). The court, in that case, construed the standard "changed condition" clause and held that it referred to a latent condition existing at the time the contract was entered into and not one occurring thereafter. Although there is some slight difference in language between the clause there construed and the changed conditions clause in this contract, that language also refers to a latent condition at the time of contracting, not something discovered later. The second Arundel case, 103 Ct.Cl. 688, 710, cert. denied, 326 U.S. 752, 66 S.Ct. 90, 90 L.Ed. 451, supports this construction, since the identical clause contained in the contract in suit was there considered. See 85 A.L.R.2d 211, 230.

█ Finally, the plaintiff contends that a change order which resulted in extending the period of performance into the period during which the cave-in happened is such a cardinal change as to constitute a breach of contract. This claim must be considered abandoned as the plaintiff has requested no findings of fact in support thereof. See Rule 57 (f).

The Government contends simply that since the contract work had not been finally completed, inspected and accepted, the plaintiff had expressly agreed in the words of the contract to hold itself responsible for any damage to the work which occurred prior thereto.

Both parties cite the careful annotation of the cases dealing with the question of who must bear loss from destruction of or damage to a building during performance of a building contract without fault of either party at 53 A.L.R. 103, as upholding its position.

The starting point for our consideration of the issues raised must begin with the fact that although the plaintiff's performance of the work prior to the cave-in was substantially finished, there yet remained a few minor punch-list items yet to be corrected. The further fact also to be considered is that there had been no final inspection or acceptance by the defendant before the cave-in occurred.

The pertinent contract provisions are found in the following:

ARTICLE 10. *Permits and responsibility for work.*—The contractor shall * * * and shall be responsible for all materials delivered and work performed until completion and final acceptance. Upon completion of the contract the work shall be delivered complete and undamaged.

*       *       *       *       *       *

ARTICLE 16. *Payments to contractors*—

*       *       *       *       *       *

(*b*) * * * *And provided further.* That on completion and acceptance of each separate building, vessel, public work, or other division of the contract, on which the price is stated separately in the contract, payment may be made in full, including retained percentages thereon, less authorized deductions.

(*c*) All material and work covered by partial payments made shall thereupon become the sole property of the Government, but this provision shall not be construed as relieving the contractor from the sole responsibility for all materials and work upon which payments have been made or the restoration of any damaged work, or as a waiver of the right of the Government to require the fulfillment of all the terms of the contract.

*       *       *       *       *       *

From the above-quoted contract provisions, it may be readily perceived, that the plaintiff undertook, not alone to perform the work, but also to hold itself responsible to the defendant for any damage from whatever cause (since no ex-

ception appears) before it was completed and accepted.

■ The plaintiff, having agreed to deliver for acceptance a fully completed and accepted foundation and excavation, must repair at its cost the damage which resulted from the broken water main of the District of Columbia government. The language of the decision of the United States Supreme Court in the case of Dermott v. Jones (Ingle v. Jones) 69 U.S. (2 Wall.) 1, 7, 17 L.Ed. 762 (1865) is particularly apt.

\* \* \* \* \* \*

That covenant it was his duty to fulfil, and he was bound to do whatever was necessary to its performance. Against the hardship of the case he might have guarded by a provision in the contract. Not having done so, it is not in the power of this court to relieve him. He did not make that part of the building "fit for use and occupation." It could not be occupied with safety to the lives of the inmates. It is a well-settled rule of law, that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him. [Footnote omitted.]

\* \* \* \* \* \*

The principle, which controlled the decision of the cases referred to rests upon a solid foundation of reason and justice. It regards the sanctity of contracts. It requires parties to do what they have agreed to do. If unexpected impediments lie in the way, and a loss must ensue, it leaves the loss where the contract places it. If the parties have made no provision for a dispensation, the rule of law gives none. It does not allow a contract fairly made to be annulled, and it does not permit to be interpolated what the parties themselves have not stipulated.

\* \* \* \* \* \*

Id. at 7.

While the degree of completion was much more advanced in this case when the damage occurred than in the case of De Armas v. United States, 70 F.Supp. 605, 108 Ct.Cl. 436 (1947), the language of Judge Madden's opinion at page 468 of that case, 70 F.Supp. at page 606, is applicable to the case at bar. It reads:

\* \* \* \* \* \*

The question, then, is, who must bear the loss from a destruction of a part of the work which the plaintiff had contracted to do, while that work was in an unfinished stage. The specifications, as shown in findings 3 and 33, require of the plaintiff a completed job, quite comparable to a construction job. He was to manufacture and sink the mattresses, cover them with stone and make the repairs to the jetty, as specified. The specifications as to final examination and acceptance certainly contemplated that the work should stand in place in a useful condition when the contract was completed. We think, therefore, that its being damaged by forces of nature and without anyone's fault before it was completed and accepted as complete, was the plaintiff's misfortune and loss.

\* \* \* \* \* \*

There is a marked similarity between the facts of this case and that of Mittry v. United States, 73 Ct.Cl. 341 (1931). There the plaintiff contracted to construct a group of buildings at the veterans' hospital in San Fernando, California. The contract contained provisions substantially similar to the provisions of the contract in suit quoted above. The defendant had contracted with a gas company to supply gas for the hospital buildings. At a time when building No. 6 was substantially completed but for minor items such as sweeping, window washing, lock adjusting and painting, but before final inspection and acceptance, it was severely damaged by a gas explosion. It was determined that the cause of the explosion was due to the negligence of the plumbing contractor (an

independent contractor) and the gas company. The court there said, at page 357:

\* \* \* \* \* \*

In view of the fact that the explosion was not caused by any fault or negligence on the part of either the plaintiffs or the defendant, and the obligations imposed upon plaintiffs by the contract to construct and deliver to the Government a building "in a complete and perfect state," plaintiffs can not recover the cost incurred by them in reconstructing building No. 6. The building at the time of the explosion had not been inspected and accepted by the Government. It is true work upon the building was substantially finished and was ready for inspection, but until its final inspection and acceptance by the Government, the plaintiffs, under Article XIII of the contract, were responsible for its proper care and protection. The Government was entitled to receive a completed building.

The rule is well settled that where a contractor undertakes to erect a building, and during the process of construction the building is injured or destroyed without fault of either party to the contract, the contractor is still bound by his undertaking to complete the building, and is liable in damages if he fails to do so. (Citing cases).

The plaintiff places great reliance on the line of cases cited in 53 A.L.R. 103 at page 116, to the effect that where a contractor is to contribute only a part of the labor and materials toward the erection of a building, the owner or other independent contractors to do part of the work and furnish part of the materials, the contractor is discharged from his obligation by the destruction of the building before completion and may recover on an implied assumpsit for the value of what he has already done. Those cases are all clearly distinguishable from the case in suit in that their rationale runs contra to the express undertakings made by the plaintiff in the contract provisions quoted *supra*.

The plaintiff also cites W. E. Callahan Const. Co. v. United States, 91 Ct.Cl. 538 (1940). In that case however, the damage to the contractor's work had been caused by the acts of the authorized agents of the United States, whereas in this case, the damage to the work was, as the parties have stipulated, without fault as to either contracting party. The case is accordingly inapposite.

It is concluded that the plaintiff is not entitled to recover, and, therefore, its petition is dismissed.