Chwee H. OW–TAYLOR, Petitioner,

v.

OVERSEAS PRIVATE INVESTMENT
CORPORATION, Respondent.

No. 01–3051.

United States Court of Appeals,
Federal Circuit.

May 7, 2001.

Rehearing Denied July 5, 2001.

Before CLEVENGER, RADER, and GAJARSA, Circuit Judges.

PER CURIAM.

The Merit Systems Protection Board ("Board") affirmed the dismissal of Ms. Ow–Taylor from the Overseas Private Investment Corporation ("OPIC"). *Ow–Taylor v. Overseas Private Investment Corp.*, No. DC1221990568–W–1, 2000 WL 1466664 (M.S.P.B. Sept.14, 2000) (final order). Ms. Ow–Taylor contests the dismissal as unlawful under the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (codified at various sections of 5 U.S.C.) ("WPA"). The administrative judge's initial decision found that OPIC established that Ms. Ow–Taylor would have been removed in the absence of her alleged protected disclosures. *Ow–Taylor v. Overseas Private Investment Corp.*, No. DC1221990568–W–1 (M.S.P.B. Feb.29, 2000) (initial decision) (*"Ow–Taylor"*).

Because substantial evidence supports the Board's decision, we *affirm*.

## I

On March 28, 1998, Ms. Ow–Taylor received a career-conditional appointment with OPIC, a federally-funded government agency that insures U.S. overseas investments against political risks of expropriation, currency inconvertibility and political violence. The appointment was subject to the completion of a one-year probationary period. Ms. Ow–Taylor's supervisor was Mr. Brache, Regional Manager for Asia and the Middle East.

The administrative judge's opinion lists evidence and testimony demonstrating that as early as May 1998, Mr. Brache had expressed concerns about Ms. Ow–Taylor's behavior and performance. A meeting was held on July 15, 1998, for the purpose of discussing Mr. Brache's concerns about Ms. Ow–Taylor with Ms. Martin, Vice President of the Insurance Department, and Ms. Wrightson, Personnel Management Officer. Topics discussed at this meeting included inappropriate e-mail messages sent by Ms. Ow–Taylor, a telephone incident with a Central Intelligence Agency ("CIA") employee that had led to a complaint about Ms. Ow–Taylor's rudeness, and Ms. Ow–Taylor's failure to attend meetings. The record establishes that as of July 15, 1998, OPIC had documented legitimate concerns about Ms. Ow–Taylor's suitability for continued employment with OPIC. Mr. Brache began maintaining a written record of incidents with Ms. Ow–Taylor after the July meeting.

On August 14, 1998, Mr. Brache scheduled another meeting for August 19, 1998, to discuss Ms. Ow–Taylor's behavior and performance. In an August 24, 1998 memorandum, Jeffrey D. Caplan, Director of Human Resources, notified Ms. Ow–Taylor that she was being terminated because she "[had] not performed satisfactorily in [her] position and [had] not responded effectively to supervisory guidance ." Accordingly, Ms. Ow–Taylor's appointment was terminated on October 1, 1998.

Ms. Ow–Taylor argues that her dismissal was in reprisal for her protected whistleblowing activity. Ms. Ow–Taylor alleges three separate incidents of protected whistleblowing activity. First, she claims that during the first or second week of August 1998, she informed her supervisor, Mr. Brache, of missing documentation from the files of a case that she was working on. Ms. Ow–Taylor alleges that the absence of this documentation evidenced gross mismanagement, waste of funds, and abuse of authority by Mr. Brache. The second disclosure at issue consists of an August 17, 1998, e-mail message sent by Ms. Ow–Taylor to Mr. Brache and Ms. Martin containing a risk analysis that Ms. Ow–Taylor performed regarding a proposed insurance contract extension during a volatile political situation in Pakistan. Ms. Ow–Taylor asserts that the e-mail is critical of Mr. Brache for his approval of the contract extension. The third disclosure at issue concerns a series of e-mail messages sent by Ms. Ow–Taylor between August 18–20, 1998, regarding OPIC's policy of handling "Confidential" documents.

## II

█ The administrative judge initially assumed that all three of the disclosures at issue qualified as protected disclosures under the WPA. The administrative judge's opinion found that each of the disclosures at issue occurred close enough in time to Ms. Ow–Taylor's dismissal such that they could have been a contributing factor in the decision to remove Ms. Ow–Taylor. Under the WPA, once an employee has established by a preponderance of the evidence that she made a protected disclo-

sure, was subject to disciplinary action, and that the disclosure was a contributing factor to the action taken against her, the agency must prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. *See* 5 U.S.C. § 1221(e) (1994); *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1322 (Fed.Cir.1999).

The administrative judge found that the agency (OPIC) established by clear and convincing evidence that it would have removed Ms. Ow–Taylor in the absence of the protected disclosures that she alleged. Ms. Ow–Taylor's supervisor, Mr. Brache, testified that as early as May 1998 he began to have concerns about her behavior and performance. Ms. Ow–Taylor's earliest protected disclosure occurred in August of 1998. The administrative judge's opinion notes that "[a]s of July 15, 1998, the record establishes that the agency had documented, legitimate concerns with appellant's behavior and performance and that for reasons that could have no possible connection to her future disclosures was evaluating whether appellant should be terminated during her probationary period." *Ow–Taylor*, slip op. at 8. Furthermore, Mr. Brache's actions on August 14, 1998, to schedule another meeting to discuss continuing concerns with Ms. Ow–Taylor's performance occurred before Ms. Ow–Taylor made the e-mail disclosures of August 17 and 18.

## III

■ Decisions of the Board must be sustained unless they are arbitrary, capricious, not in accordance with law, obtained without procedures required by rule, law, or regulation, or unsupported by substantial evidence. *See* 5 U.S.C. § 7700(c) (1994); *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984). Our function as a reviewing court is to determine whether the Board's findings are supported by substantial evidence; we do not perform a *de novo* review of the facts. *Bevans v. Office of Pers. Mgmt.*, 900 F.2d 1558, 1565 (Fed.Cir.1990). On appeal to this court, Ms. Ow–Taylor asserts that the Board's decision is not supported by substantial evidence.

■ First, Ms. Ow–Taylor claims that the administrative judge incorrectly decided the facts of her performance and conduct. This argument essentially asks this court to substitute its judgment for that of the Board, and to draw factual inferences that the administrative judge and the Board declined to draw. Our function as a reviewing court is only to determine whether or not the Board's decision is supported by substantial evidence. The administrative judge's opinion details extensive testimony from Mr. Brache and Ms. Martin regarding problems with Ms. Ow–Taylor's performance, and Ms. Ow–Taylor herself admitted that she hung up the phone on a CIA analyst. The administrative judge's opinion contains substantial evidence suggesting that OPIC's decision to terminate Ms. Ow–Taylor was based upon performance concerns.

■ Ms. Ow–Taylor also claims that the administrative judge incorrectly decided the facts relating to her August 17, 1998, e-mail disclosure, and determined that the e-mail message was not, in fact, a protected disclosure. Again, we note that this court does not substitute its own factual judgments for that of the Board. Also, the administrative judge's opinion *did* assume that the August 17 e-mail message constituted a protected disclosure. However, the opinion goes on to state that the August 17 e-mail message does not, on its face, allege any wrongdoing by Mr. Brache, and that this e-mail does not establish a motive for retaliation against Ms. Ow–Taylor. The e-mail merely contains a

risk analysis that Ms. Ow–Taylor performed as part of her job duties. Ms. Martin and Mr. Brache both testified that neither one of them understood the August 17 e-mail to allege any wrongdoing by Mr. Brache. Even assuming, as the administrative judge did, that this e-mail message constitutes a protected disclosure, substantial evidence supports the determination that the August 17 e-mail did not establish a motive to retaliate against Ms. Ow–Taylor.

■ Ms. Ow–Taylor also alleges that the administrative judge was biased against her and appeared to assign more credibility to the testimony of OPIC officials than to her own testimony. It is the duty of the Board to determine the credibility of all of the witnesses and to accept the testimony that it finds most plausible. *Kohler v. United States*, 204 Ct.Cl. 777, 498 F.2d 1360, 1363 (Ct.Cl.1974). These credibility determinations are virtually unreviewable on appeal. *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed.Cir. 1986).

■ Ms. Ow–Taylor additionally contests several evidentiary and discovery rulings. Procedural matters regarding discovery and evidentiary issues fall within the sound discretion of the Board, and this court reviews the Board's decisions on such matters under an abuse of discretion standard. *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed.Cir.1988). If an abuse of discretion did occur, in order to prevail, the petitioner must also prove that she was prejudiced by the error such that it could have affected the outcome of her case. *Cornelius v. Nutt*, 472 U.S. 648, 657–659, 105 S.Ct. 2882, 86 L.Ed.2d 515 (1985); *Smith v. United States Postal Serv.*, 789 F.2d 1540, 1545 (Fed.Cir.1986).

■ In this regard, Ms. Ow–Taylor first alleges that she was unfairly prejudiced by the administrative judge's ruling at the hearing denying her motion to introduce her calendar/work record as evidence. The administrative judge sustained OPIC's objection to the admission of this document as evidence upon the grounds that: 1) Ms. Ow–Taylor had already testified to the facts it allegedly represented; 2) it was therefore probably cumulative; and 3) the late submission of the document provided no opportunity to verify its origin and probity. Given the cumulative nature of the document and the fact that it was never produced during discovery but was only introduced during the hearing itself, the administrative judge's rejection of the proffered evidence did not constitute an abuse of discretion.

■ Second, Ms. Ow–Taylor asserts that she was unfairly prejudiced by the administrative judge's refusal to allow the testimony of James Harris, a CIA employee. Ms. Ow–Taylor claims that Mr. Harris would have testified regarding his conversations advising Ms. Ow–Taylor on how to respond to OPIC actions throughout her last day at the agency. Mr. Harris would also have testified regarding an e-mail message which Ms. Ow–Taylor sent to him immediately after the CIA incident on July 10, 1998. Ms. Ow–Taylor does not allege that Mr. Harris had any direct contact with the relevant OPIC officials. Nor was he actually present when any of the events at issue took place, and therefore he is not competent to testify about these events. The administrative judge's exclusion of Mr. Harris's testimony was not an abuse of discretion.

■ Third, Ms. Ow–Taylor argues that she was improperly denied discovery, because the administrative judge denied her request for an extension of time for discovery after Ms. Ow–Taylor obtained new counsel. The June 10, 1999, Acknowledgement Order in this case specified that dis-

covery was to begin within 25 days of the order, or July 5, 1999. *Ow–Taylor v. Overseas Private Investment Corp.*, No. DC1221990568–W–1 (M.S.P.B. June 10, 1999) (acknowledgement order). It is undisputed that Ms. Ow–Taylor's first counsel failed to initiate any discovery. Ms. Ow–Taylor's second counsel filed a "Notice of Substitution of Counsel" on October 28, 1999, more than three months after the deadline for initiating discovery had begun. The subsequent request for an extension of time for discovery was then denied.

The MSPB's regulations and the Acknowledgement Order are clear: parties who wish to make discovery requests must serve their initial requests within 25 days after the date on which the judge issues an order to the respondent agency to produce the agency file and response. 5 C.F.R. § 1201.73(d) (2000). Motions for extension of time are granted only upon a showing of good cause. 5 C.F.R. § 1201.55(c) (2000). The administrative judge was thus within his discretion to deny an extension of discovery simply because Ms. Ow–Taylor's first retained counsel failed to comply with the applicable regulations and order regarding discovery. It is well-settled that a client bears the consequences of the acts and omissions of her representative. *See Rowe v. Merit Sys. Prot. Bd.*, 802 F.2d 434, 437 (Fed.Cir.1986).

For the foregoing reasons, the decision of the Board is affirmed.