ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Paragon Defense Solutions, Inc. | ) ASBCA No. 64168 |
| | ) |
| Under Contract No. SPE7M2-23-P-1048 | ) |

APPEARANCE FOR THE APPELLANT:      Mr. Weiwei Jian
                                                             President

APPEARANCES FOR THE GOVERNMENT:      Gary P. Bilski, Esq.
                                                                      DLA Chief Trial Attorney
                                                                   John J. Pritchard, Esq.
                                                                   Julie K. Phillips, Esq.
                                                                   Adam J. Heer, Esq.
                                                                      Trial Attorneys
                                                                      DLA Land and Maritime
                                                                      Columbus, OH

OPINION BY ADMINISTRATIVE JUDGE EYESTER

Paragon Defense Solutions, Inc. (Paragon) appeals the deemed denial of its claim, where it argued entitlement to payment for items delivered to the Defense Logistics Agency (DLA) pursuant to a purchase order. In response, DLA argues that Paragon could only accept the unilateral purchase order by providing conforming items, which it did not. DLA contends the purchase order has therefore lapsed and Paragon is not entitled to the requested amount.

Paragon elected to pursue this appeal pursuant to the Board's Rule 12.2, Small Claims (Expedited) procedure. Accordingly, this decision shall have no precedential value, and in the absence of fraud shall be final and conclusive and may not be appealed or set aside. 41 U.S.C. § 7106(b)(4)-(5). Paragon also pursued this appeal pursuant to Board Rule 11, in which the decision rests upon written evidence without courtroom testimony. Based on the following, we deny Paragon's appeal.

FINDINGS OF FACT

1. On December 29, 2022, DLA issued fixed-priced purchase order No. SPE7M2-23-P-1048 to Paragon in the amount of $12,520 (R4, tab 1 at 1, 5). Pursuant to the purchase order, Paragon was to provide 1,252 1/2 inch "CAP, TUBE" fittings (item No. 4730-00-595-1283) by May 30, 2023 (*id.* at 4-5). These fittings are used for steam, air, oil or water piping service aboard naval vessels (R4, tab 7 at 49).

2. Box 16 of the purchase order included a check box stating that if it was "marked" the "supplier must sign Acceptance and return." The box was not marked and Paragon did not sign the purchase order; only the DLA contracting officer signed the order. (R4, tab 1 at 1)

3. The purchase order noted the item was a critical application item and incorporated by reference the following specifications: MIL-DTL-1183K(2) (dated 08/20/2019) and MIL-DTL-1183/2A(1) (dated 08/20/2019). The part/piece number was M1183/2-03 S. (R4, tab 1 at 4)

4. MIL-DTL-1183K(2) was the "Detail Specification" for "pipe fittings of cast bronze with at least one end for silver-brazing into steam, air, oil, or water piping systems" (R4, tab 7 at 40). Table 1 of the specification included the following requirements for a 1/2 inch pipe: minimum 3/8 inch depth of socket; minimum 0.840 and maximum 0.843 inch diameter of socket; minimum 0.929 and maximum 0.949 diameter of groove; minimum 0.146 inch face of fitting to groove; and minimum 0.083 and maximum 0.093 inch width of groove (*id.* at 43-44). The specification also included material requirements based on American Society for Testing and Materials standards (*id.* at 41).

5. MIL-DTL-1183/2A(1) set forth the specifications for cap pipe fittings. Table 1 of the specification included the following requirements for a 1/2 inch pipe: minimum 0.12 inch metal thickness of top and minimum 1.17 inch band diameter. (R4, tab 7 at 36) The specification explained that when the part is code letter "S," as it was here (M1183/2-03 S), the part was to be grooved with the brazing ring packaged separately (*id.* at 38). Hence, the purchase order required Paragon provide the brazing rings in a waterproof bag which was to have been attached to the shipping box or main component (R4, tab 1 at 5).

6. The purchase order incorporated by reference Federal Acquisition Regulation (FAR) 52.246-2, INSPECTION OF SUPPLIES-FIXED-PRICE (AUG 1996) (R4, tab 1 at 6). The destination point, which was the DLA distribution center, was also the inspection and acceptance point (*id.* at 5). Pursuant to this inspection clause, the government "has the right to inspect and test all supplies called for by the contract, to the extent practicable, at all places and times, . . . and in any event before acceptance." FAR 52.246-2(c).

7. The purchase order also incorporated by reference FAR 52.232-1, PAYMENTS (APR 1984) and 52.233-1, DISPUTES (MAY 2014) (R4, tab 1 at 7-8). The payments clause states the government shall pay the contractor for "supplies delivered and accepted." FAR 52.232-1. Further, the purchase order included Defense Federal Acquisition Regulation Supplement 252.232-7006, WIDE AREA WORKFLOW [(WAWF)] PAYMENT INSTRUCTIONS (MAY 2013), which

2

required Paragon submit its payment requests and any supporting documents through the WAWF system (R4, tab 1 at 2).

8. Paragon delivered the items on January 31, 2023 (app. supp. R4, tab 2). Paragon submitted an invoice for the items, dated January 26, 2023, through the WAWF (app. supp. R4, tab 1). On February 15, 2023, Paragon notified DLA that it delivered the items but its invoice had not yet been accepted in WAWF (R4, tab 5). Paragon emailed DLA on March 24, 2023, requesting payment for the delivered items (R4, tab 3).

9. On March 29, 2023, DLA's Product Test Center completed a test report showing that the items Paragon delivered, and which were tested (the sample size was 5), failed "workmanship and dimensional testing" (R4, tab 7 at 30-31). Specifically, the test report stated that the items were not caps and brazing rings were not provided (*id.* at 31). In other words, the items Paragon delivered were not the items required by the purchase order (*compare* R4, tab 7 at 34 (Photo No. 1), *with id.* at 36 (Figure 1)). The test report further stated the items tested failed the dimensional and chemistry requirements identified in the military specifications set forth above. And the items failed the brazing ring requirements because, as noted, Paragon did not provide brazing rings. (R4, tab 7 at 32-33)

10. DLA placed the items in litigation status due to an active review of Paragon which began in February 2023 (around when Paragon delivered the parts), and which we do not need to discuss in detail for purposes of this decision (R4, tabs 6, 9-10). This review was completed on May 8, 2023 (R4, tab 8). In July 2023, DLA noted that the items would remain in litigation status "pending conclusion of the case" which DLA believed could take several years to conclude (R4, tab 10).[1]

11. In October 2023, Paragon emailed DLA several times asking about the payment status for its delivered items (app. supp. R4, tabs 4-6). On October 20, 2023, Paragon's email to DLA stated that if the parts were unacceptable, DLA should specify the reason and return them to Paragon (app. supp. R4, tab 6).

12. Paragon submitted a claim to the contracting officer on April 1, 2024 (R4, tabs 17, 22; answer ¶ 6). In the claim, Paragon seeks $12,520 for the delivered items (R4, tab 22). The contracting officer never issued a final decision.

---

[1] Paragon filed a motion to strike prejudicial and immaterial paragraphs from DLA's answer and DLA provided a response. Because the Board does not specifically address in its decision the issues Paragon raised as a concern, the motion is moot.

13. On May 18, 2025, Paragon filed a notice of appeal and complaint with the Board. On June 2, 2025, DLA provided Paragon a copy of the inspection report and explained DLA did not accept the items because they were nonconforming, and that DLA would return the remaining items (one was destroyed for alloy testing) at DLA's expense (app. supp. R4, tab 7 at 1-2). DLA explained that the remaining items were in "new, unused condition" (*id.* at 2). Paragon declined DLA's offer as the appeal at the Board was pending (*id.* at 1).

DECISION

In its appeal, Paragon argues that the inspection clause required DLA to promptly accept or reject the supplies delivered and here, it took DLA 28 months to notify Paragon of the nonconforming goods which meant DLA waived its right to reject the items and constructively accepted them (app. br. at 1-2 (citing *Standbuy Distribs., Inc.*, ASBCA No. 62721, 21-1 BCA ¶ 37,898); app. reply at 1). Similarly, Paragon argues that pursuant to the relevant payments clause, DLA must pay Paragon as there was a *de facto* acceptance of the items and failing to pay when the government retained the items constitutes a breach of contract (app. br. at 2-3). Further, Paragon challenges the test results as unreliable and inadmissible, argues the change in contracting officers and delay in responding to Paragon's emails flouted the duty of fair and impartial treatment, and contends DLA failed to follow FAR procedures when assigning a new contracting officer (*id.* at 3-5).

DLA argues that as the purchase order was unilateral, it could only be accepted through performance in accordance with the incorporated terms and conditions (gov't br. at 1, 5-6). DLA maintains that since Paragon did not provide conforming goods (i.e., failed to perform in accordance with the terms and conditions), the purchase order expired and there is no contract (*id.* at 5 (quoting *Delta Indus., Inc.*, ASBCA No. 57356, 12-1 BCA ¶ 34,959 at 171,860; *Comptech Corp.*, ASBCA No. 55526, 08-2 BCA ¶ 33,982 at 168,082)). DLA contends that as no contract was formed, Paragon's breach of contract claim must fail (gov't br. at 6 (citing *Comptech Corp.*, 08-2 BCA ¶ 33,982 at 168,083)). In the alternative, DLA argues that if the Board finds there is an existing contract, since Paragon breached the contract first by delivering non-conforming items, the doctrine of antecedent breach applies and Paragon is barred from any recovery (gov't br. at 6-8).

FAR part 13 addresses simplified acquisition procedures. FAR § 13.004(a) explains that a quotation is not an offer and therefore cannot be accepted by the government to form a binding contract. Rather, the purchase order issued to a supplier is an offer by the government which the supplier can accept either in writing or by furnishing the supplies ordered or proceeding with the work to the point there has been substantial performance. FAR 13.004(a), (b). Here, since Paragon did not sign the

4

purchase order (finding 2) the only way Paragon could accept it was by furnishing the supplies or engaging in substantial performance.

As noted, DLA contends that Paragon did not provide the supplies it ordered because they were nonconforming, and therefore Paragon did not accept the purchase order. Paragon argues it engaged in "substantial performance" because it delivered items to DLA (app. reply at 1).

When a supplier substantially performs in an effort to provide the item that is the subject of the purchase order, an option contract is created and the government's offer becomes irrevocable until the date specified for delivery. *Commwise, Inc. Joseph Wetzel d/b/a Avetel*, ASBCA No. 56580, 09-2 BCA ¶ 34,240 at 169,230. However, "[i]f complete performance in accordance with the offer's terms and conditions is not tendered [by the due date], the 'offer' lapses by its own terms." *Comptech Corp.*, 08-2 BCA ¶ 33,982 at 168,082 (citations omitted). The offer lapses because the supplier (offeree) can no longer perform in accordance with the offer's terms. *TTF, LLC*, ASBCA Nos. 58495, 58516, 13-1 BCA ¶ 35,403 at 173,696. To create a binding contract, the supplier's (offeree's) "actions of acceptance cannot deviate from the terms of the "offer."" *Comptech Corp.*, 08-2 BCA ¶ 33,982 at 168,083 (citations omitted). In other words, if the supplier provides nonconforming items, there has been no acceptance of the offer.

An immediate right to withdraw or cancel an offer arises when the supplier (offeree) fails to perform by the specified date, however, the government (offeror) does not have to formally notify the supplier (offeree) that the offer lapsed or take any other specific action because, as a matter of law, the supplier (offeree) cannot bind the government (offeror) by subsequent acceptance. *Comptech Corp.*, 08-2 BCA ¶ 33,982 at 168,083-84; *see also Delta Indus., Inc.*, 12-1 BCA ¶ 34,959 at 171,861 ("Once its offer has lapsed, the offeror need take no action to cancel the offer, and the offeree supplier cannot thereafter bind the offeror by subsequently tendering full performance.").

Paragon was to supply these items to DLA by May 30, 2023 (finding 1). While it did supply items (finding 8), they were not in accordance with the terms and conditions of the purchase order (findings 3-5, 9). Pursuant to the inspection clause which was incorporated by reference into the purchase order (finding 6), the government "has the right to inspect and test all supplies called for by the contract, to the extent practicable, at all places and times, including the period of manufacture, and in any event before acceptance." FAR 52.246-2(c). DLA tested the items and they failed (finding 9). In fact, the items Paragon delivered were not even caps and did not include brazing rings (findings 3-5, 9).

While Paragon disputes DLA's test results, we note that Paragon has never stated the items provided met the purchase order's requirements. In fact, pursuant to the inspection clause, Paragon was required to provide and maintain an inspection system for the items provided and "tender to the Government for acceptance only supplies that have been inspected in accordance with the inspection system and have been found by [Paragon] to be in conformity with contract requirements." FAR 52.246-2(b). As part of its inspection system, Paragon was required to have "records evidencing all inspections made under the system and the outcome." FAR 52.246-2(b). Despite the fact Paragon was required to maintain its own inspection system and records evidencing it inspected the items and they met the order's requirements, Paragon provided no evidence of this.

Paragon failed to provide conforming items. While Paragon argues that mere delivery constitutes acceptance (app. reply at 1), it does not. DLA never accepted these items (finding 13).[2] Accordingly, the purchase order lapsed.

Paragon's central argument is that DLA took too long to notify Paragon of the defects or reject the items and therefore there was a constructive acceptance. In this regard, the pertinent FAR inspection clause required DLA to accept or reject supplies as promptly as practicable after delivery unless otherwise provided. FAR 52.246-2(j). FAR 46.407(g) provides:

> Notices of rejection must include the reasons for rejection and be furnished promptly to the contractor. Promptness in giving this notice is essential because, if timely nature of rejection is not furnished, acceptance may in certain cases be implied as a matter of law.

Implied acceptance, also referred to as constructive acceptance, "arises from a Government act inconsistent with the contractor's ownership of such items." *Ateron Corp.*, ASBCA No. 46867, 96-1 BCA ¶ 28,165 at 140,577 (citing *John C. Kohler Co. v. United States*, 498 F.2d 1360 (Ct. Cl. 1974) (government use and custody of a boiler for three months resulted in its implied acceptance), *Silent Hoist & Crane Co.*, ASBCA No. 9872, 1964 BCA ¶ 4488). Specifically, retention and use of the goods by the government can signify implied acceptance/constructive acceptance.[3] *See id.*

---

[2] Because DLA never accepted the items, Paragon's citation to *Standbuy Distributors*, is inapplicable because that appeal concerns the revocation of acceptance.

[3] As noted, DLA placed the items in litigation status due to an active review which began around the time Paragon delivered the parts. While DLA completed the review in May 2023, the items remained in litigation status with "the case" pending, which DLA believed could take several years to conclude. (Finding 10) Although we do not discuss the full details of this matter, it explains to the Board

There was no implied acceptance prior to the lapse of the purchase order, or even after the purchase order lapsed. Here, DLA offered to ship the items back to Paragon, noting they were in "new, unused condition" (finding 13) and therefore DLA has not taken ownership of them. And, since they were nonconforming, DLA could not and did not use them (finding 13). There was no implied or constructive acceptance here.

CONCLUSION

The Board concludes Paragon is not entitled to the relief requested.

Dated: September 4, 2025

LAURA EYESTER
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 64168, Appeal of Paragon Defense Solutions, Inc., rendered in conformance with the Board's Charter.

Dated: September 3, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

---

why DLA may have retained the items without intending to keep them for its own benefit indefinitely. Regardless, however, DLA did not use the items and offered to provide them back to Paragon.